# No. 08-15620

## IN THE UNITED STATES COURT OF APPEALS

### FOR THE NINTH CIRCUIT

MATTHEW G. SILVA,

                Plaintiff/Appellant,

v.

SARA J. OLSON; et al.,

                Defendants/Appellees.

Appeal from the United States District Court for the District of Arizona

No. 2:07-CV-061696-JAT-ECV

# OPENING BRIEF OF APPELLANT MATTHEW G. SILVA

Andrew M. Jacobs
Robert A. Bernheim
SNELL & WILMER L.L.P.
One South Church Avenue
Suite 1500
Tucson, AZ 85701
(520) 882-1200
Attorneys for Plaintiff/Appellant

1

## TABLE OF CONTENTS

JURISDICTIONAL STATEMENT ........................................................................ 2

STATEMENT OF ISSUES PRESENTED ............................................ 4

STATEMENT OF THE CASE ............................................................ 5

STATEMENT OF FACTS ................................................................ 6

SUMMARY OF ARGUMENT……………………………………………………9

I.      SILVA HAS A CONSTITUTIONAL RIGHT TO MAINTAIN HIS
        PREVIOUSLY FILED CIVIL AND CRIMINAL ACTIONS
        WITHOUT INTERFERENCE FROM PRISON OFFICIALS, AND
        HE HAS STATED A VALID ACCESS TO JUSTICE CLAIM
        BASED ON PAST INTERFERENCE. ........................................... 11

A.      Standard of Review........................................................... 11

B.      Silva Has a Constitutional Right to Maintain His Actions After Filing
        Without Active Interference by the Appellees. ............................ 11

C.      Silva Suffered Actual Injury as a Result of Appellees' Actions and
        Alleged Facts Sufficient to Maintain His Access to Courts Claim. ............. 16

II.     SILVA ADEQUATELY STATED A CLAIM FOR RELIEF BASED
        ON APPELLEES' RETALIATORY CONDUCT. ...................................... 17

B.      The First Amended Complaint Adequately States an Unlawful
        Retaliation Claim Under Any Pleading Standard........................................ 17

III.    SILVA CAN AMEND THE COMPLAINT TO FIX ANY
        PLEADING DEFICIENCIES, AND THEREFORE THE DISTRICT
        COURT ERRED IN DISMISSING WITHOUT LEAVE TO
        AMEND. ................................................................. 21

IV.     SILVA SHOULD NOT BE PENALIZED WITH A "STRIKE"
        PURSUANT TO 28 U.S.C. § 1915(g). ..................................... 25

CONCLUSION| ...................................................................... 26

STATEMENT OF RELATED CASES ........................................... 28

CERTIFICATE OF SERVICE......................................................... 29

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMTIATION,
TYPEFACE REQUIRMENTS, AND TYPE STYLE REQUIREMENTS ........... 31

TABLE OF AUTHORITIES

FEDERAL CASES

129 S. Ct. 1937, 1949 (2009) ................................................................18

Adams v. Cal. Dep't of Health Servs., 487 F.3d 684, 688 (9th Cir. 2007) ..............................................................................................20

Bounds v. Smith, 430 U.S. 817 (1977) ..................................................11

Byrd v. Maricopa County Sheriff's Dep't, 565 F.3d 1205, 1212 (9th Cir. 2009) ..........................................................................10, 16

Carter v. Hutto, 781 F.2d 1028, 1031-32 (4th Cir. 1986)......................13

Cato v. United States, 70 F.3d 1103, 1106 (9th Cir. 1995) ..............21, 22

Christopher v. Harbury, 536 U.S. 403, 413 (2002) ...............................15

Coto Settlement v. Eisenberg, 593 F.3d 1031, 1034 (9th Cir. 2010) ..............10, 16

Deputy Sheriff or Jailor/Custodian of Prisoners, 574 F.2d 427, 429 (8th Cir. 1978)......................................................................13

Green v. Johnson, 977 F.2d 1383, 1389-90 (10th Cir. 1992) ................13

Hatfield v. Bailleaux, 290 F.2d 632, 637 (9th Cir. 1961)......................13

Hiney v. Wilson, 520 F.2d 589, 591 (2d Cir. 1975) ..............................13

Huftile v. Miccio-Fonseca, 410 F.3d 1136, 1138 (9th Cir. 2005) ..............10, 16

Hull, 312 U.S. 546, 547-49 (1941) .......................................................12

Johnson v. Avery, 393 U.S. 483, 484, 489-90 (1969) ...........................12

Kensu v. Haigh, 87 F.3d 172, 175 (6th Cir. 1996) ................................12

Knappenberger v. City of Phoenix, 566 F.3d 936, 942 (9th Cir. 2009) ................21

Lewis v. Casey, 518 U.S. 343 (1996) ............................................ passim

Lira v. Herrera, 427 F.3d 1164, 1169-70 (9th Cir. 2005) ......................21

Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000).............................21

Masters v. Gilmore, 663 F. Supp. 2d 1027, 1047 (D. Colo. 2009) ........19

Mendocino Envtl. Ctr. v. Mendocino County, 192 F.3d 1283, 1300 (9th Cir. 1999)......................................................................17

Moss v. U.S. Secret Serv., 572 F.3d 962, 972 (9th Cir. 2009) .........20, 21

Phillips v. Hust, 477 F.3d 1070, 1076 (9th Cir. 2007) (holding arbitrary denial of access to a comb-binding machine sufficient to assert "actual injury" for access to court claim), vacated on other grounds, 129 S. Ct. 1036 (2009)...............................................12

Reyes v. Fairfield Props., 661 F. Supp. 2d 249, 266 (E.D.N.Y. 2009) ................19

Rhodes v. Robinson, 408 F.3d 559, 567 (9th Cir. 2005)...................17, 18

Sigafus v. Brown, 416 F.2d 105, 107 (7th Cir. 1969) ...........................13

Simmons v. Dickhaut, 804 F.2d 182, 183-84 (1st Cir. 1986) ...............................13

Sisseton-Wahpeton Sioux Tribe v. United States, 90 F.3d 351, 355 (9th Cir. 1996)...........................................................................................20

Snyder v. Nolan, 380 F.3d 279, 290-91 (7th Cir. 2004)...................................13, 14

United States v. SmithKline Beecham, Inc., 245 F.3d 1048, 1052 (9th Cir. 2001) ............................................................................................22, 24

Vigliotto v. Terry, 873 F.2d 1201, 1202 (9th Cir. 1989)........................................13

Whittington v. Whittington, 733 F.2d 620, 621 (9th Cir. 1984) ..............................1

Wright v. Newsome, 795 F.2d 964, 968 (11th Cir. 1986) .....................................13

Zilich v. Lucht, 981 F.2d 694, 695 (3d Cir. 1992) ................................................13

## STATE CASES

Dkt. 12 at ¶ 42(i) ...................................................................................................6

Dkt. 12 at ¶ 42(ii) ..................................................................................................7

Dkt. 12 at ¶ 42(iii) .................................................................................................7

Dkt. 12 at ¶ 42(iv) .................................................................................................7

Dkt. 12 at ¶ 42(v) ..................................................................................................7

Dkt. 12 at ¶ 45 ....................................................................................................18

Dkt. 12 at ¶ 46 ....................................................................................................18

Dkt. 12 at ¶¶ 20-27, 29-31, & 33-35 ...................................................................23

Dkt. 12 at ¶¶ 25-26, 28-29, 33-34, & 40-42 ...................................................8, 14

Dkt. 12 at ¶¶ 26, 29-30, 33-34, & 40-44 ......................................................18, 19

Dkt. 12 at ¶¶ 40-44 .............................................................................................15

Dkt. 21 at ¶ 51 ......................................................................................................5

Dkt. 21 at ¶¶ 59, 63, 105, 111, 149, 158-162, 166, & 179 ....................................8

Dkt. 25-26)     STATEMENT OF FACTS In 2004 ................................................5

## FEDERAL STATUTES

18 U.S.C. §§ 1961-1968 (2006).............................................................................1

28 U.S.C. § 1291 ....................................................................................................2

28 U.S.C. § 1331 ....................................................................................................1

28 U.S.C. § 1332 ....................................................................................................1

28 U.S.C. § 1915(e) .............................................................................................10

28 U.S.C. § 1915(g) ...................................................................................i, 4, 24, 25

28 U.S.C. § 1915A(a)..............................................................................................4

28 U.S.C. § 1915A(b)(1)..........................................................................................1

42 U.S.C. § 1983 .................................................................................................1, 4

## FEDERAL RULES

Fed. R. App. P. 32(a)(5) ........................................................................1

Fed. R. App. P. 32(a)(6) ........................................................................1

Fed. R. App. P. 32(a)(7)(B) ...................................................................1

Fed. R. Civ. P. 12(b)(6) .......................................................................10

Fed. R. Civ. P. 15(a) ......................................................................21, 24

## STATE RULES

Federal Rule of Civil Procedure 15 .....................................................21

Federal Rule of Civil Procedure 8 .......................................................19

## JURISDICTIONAL STATEMENT

On September 4, 2007, Plaintiff/Appellant Matthew Silva ("Silva") filed this lawsuit in the United States District Court for the District of Arizona (the "District Court"). (Dkt. 1) Without considering the substance of the Complaint in any way, the District Court directed Silva to submit an amended complaint on a required form used in prisoner cases. *See* Order Dated October 29, 2007 (Dkt. 7); Rule 3.4(a), Rules of Practice for the U.S. Dist. Ct. for the Dist. of Ariz. Silva later filed his First Amended Complaint on January 16, 2008. (Dkt. 12) The First Amended Complaint alleged claims for violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-1968 (2006), and violations of various constitutional civil rights pursuant to 42 U.S.C. § 1983.[1] (Dkt. 12) The District Court therefore had jurisdiction over Silva's claims pursuant to 28 U.S.C. § 1331.

The District Court later dismissed Silva's action without leave to amend for failure to state a claim pursuant to 28 U.S.C. § 1915A(b)(1). (Dkt. 13) The dismissal without leave to amend constitutes a final decision of the District Court. See Whittington v. Whittington, 733 F.2d 620, 621 (9th Cir. 1984). This Court has

---

[1] Silva also pleaded a conversion claim and asserted that the District Court had diversity jurisdiction over that claim pursuant to 28 U.S.C. § 1332. (Dkt. 12 at 4-5) Although that claim was also dismissed by the District Court, Silva does not appeal the dismissal as to that claim.

jurisdiction over Silva's appeal from the District Court's dismissal for failure to state a claim because the Order of dismissal was entered on February 29, 2008, and Silva's Notice of Appeal was timely filed on March 14, 2008.  See 28 U.S.C. § 1291; Fed. R. Civ. App. P. 4(a)(1)(A), (c)(1).  (Dkt. 13; Dkt. 15)  Accordingly, this Court has jurisdiction over this appeal.

## STATEMENT OF ISSUES PRESENTED

1.      Whether the constitutional right of access to courts exists beyond the filing of an initial pleading to prohibit active interference with direct criminal appeals and civil rights actions?

2.      Whether the District Court erred by dismissing Silva's claim for denial of his right of access to courts despite allegations that Appellees affirmatively hindered Silva's court access after he filed initial pleadings in several cases and that Silva suffered actual injury as a result?

3.      Whether the District Court erroneously dismissed Silva's retaliation claim by applying an improperly high pleading standard?

4.      Whether the District Court erred by dismissing without leave to amend and ruling that deficiencies in Silva's First Amended Complaint could not be corrected by filing an amended pleading?

## STATEMENT OF THE CASE

On September 4, 2007, Silva filed his original Complaint in the District Court with various 42 U.S.C. § 1983 claims related to violations of due process and the right to access courts, a conversion of legal documents claim under Arizona law, and a Washington state third-party beneficiary contract claim. (Dkt. 1)  The District Court initially dismissed Silva's Complaint without prejudice on September 25, 2007 because Silva had applied for *in forma pauperis* status when he filed the Complaint, and the District Court believed Silva was not eligible to file *in forma pauperis* pursuant to 28 U.S.C. § 1915(g).  (Dkt. 4)  After Silva moved for reconsideration on October 15, 2007 (Dkt. 6), the District Court vacated the earlier dismissal based on §1915(g), granted Silva *in forma pauperis* status, and dismissed with leave to amend because Silva's Complaint was not filed on a court-approved form for *in forma pauperis* prisoner lawsuits, which is required by the local rules for the District of Arizona.  (Dkt. 7 at 3)  Silva filed his First Amended Complaint on January 16, 2008 using the court-approved form.  (Dkt. 12)  In the First Amended Complaint, Silva restated his allegations and specified claims for RICO violations; interference with Silva's right of access to courts; retaliation; and conversion of legal papers.  (Dkt. 12)

The District Court then conducted its statutorily obligated screening of Silva's First Amended Complaint.  See 28 U.S.C. § 1915A(a).  As a result of its

*sua sponte* screening of the First Amended Complaint, the District Court entered its February 29, 2008 Order dismissing the First Amended Complaint ***without*** leave to amend. (Dkt. 13) The sole reason proffered for denying Silva leave to amend was that the District Court's discretion was "particularly broad where Plaintiff has previously been allowed to amend his complaint." (Dkt. 13 at 5)

Silva submitted his Notice of Appeal, appealing from the District Court's Order of dismissal, to prison authorities on March 10, 2008. (Dkt. 15) The notice of appeal was received by the Clerk of United States Court of Appeals for the Ninth Circuit and docketed on March 14, 2008. (Dkt. 15)

Silva also filed a Motion for Relief from Judgment on July 31, 2008 seeking reinstatement of this action and leave to file an amended complaint. (Dkt. 20-23) The District Court denied that motion on August 20, 2008 (Dkt. 24), as well as Silva's subsequent motion for reconsideration. (Dkt. 25-26)

## STATEMENT OF FACTS

In 2004, Silva was arrested and charged with first degree robbery. (Dkt. 21 at ¶ 51) Since that time, he has filed a number of lawsuits challenging his subsequent conviction and the conditions of his confinement. Once he began pursuing civil rights lawsuits against prison officials, those prison officials began, among other things, transferring him among within and among various prison

facilities, both in Washington and in Arizona;[2] confiscating his personal legal documents and materials; and restricting his access to legal libraries or other legal assistance. Due to the number of lawsuits, often naming the same prison officials, Silva has needed to rely on his personal legal documents to keep track of each particular case, the relevant arguments, and any deadlines, but because his documents have been confiscated (and destroyed after the Notice of Appeal in this case was filed), he has limited ability to recall particular dates and circumstances.

The applicable timeframe for the conduct described in Silva's First Amended Complaint is between approximately March 2006 and January 2007. At a minimum, the following five lawsuits are implicated (Dkt. 12 at 4-A through 4-B), though on belief more may be involved:

Silva v. Bush, et al., 2:06-cv-00984-JLR (W.D. Wash.): Silva filed this case on July 12, 2006 alleging prison officials monitored and recorded pretrial telephone calls, including legal calls while he was held at King County Department of Adult and Juvenile Detention facilities in Seattle, Washington. Silva also claimed officials retaliated against him for challenging the monitoring and recording policies and engaged in related mail tampering. (Dkt. 12 at ¶ 42(i))

Silva v. Gregoire, et al., 3:05-cv-05731-RJB (W.D. Wash.): Silva filed this case on November 4, 2005 alleging retaliation, denial of access to courts, and due

---

[2]      Silva estimates he has been transferred to different cells or facilities about 65 times since he was first incarcerated in 2004.

process violations while at the Washington Corrections Center in Shelton, Washington. (Dkt. 12 at ¶ 42(ii))

Silva v. Mayes, et al., 2:04-cv-01885-JLR (W.D. Wash.):  Silva filed this case on August 30, 2004 alleging retaliation, unlawful pretrial detention conditions, inadequate diet and exercise, and due process violations while at the Regional Justice Center in Kent, Washington. (Dkt. 12 at ¶ 42(iii))

Silva v. King County, et al., 2:04-cv-01484-JCC (W.D. Wash.):  Silva filed this case on June 26, 2004 alleging that he was forced to waive the right to appointed counsel for the defense in his robbery case in order to gain access to legal materials while incarcerated in the Regional Justice Center in Kent, Washington. (Dkt. 12 at ¶ 42(iv))

In re the Personal Restraint Petition of Mathew G. Silva, 56912-1-I (Ct. App. Wash.):  Silva filed this post-conviction lawsuit on September 21, 2005 to directly challenge his confinement on the robbery conviction due to illegal telephone monitoring and recording, lack of probable cause, and due process violations. (Dkt. 12 at ¶ 42(v))

Each of the above cases was dismissed because Appellees confiscated his legal materials, intercepted documents intended to be filed, and/or repeatedly transferred Silva, thereby causing Silva to miss applicable filing deadlines or lack the basic legal documents necessary to respond in and maintain those actions.

(Dkt. 12 at ¶¶ 25-26, 28-29, 33-34, & 40-42; Dkt. 21 at ¶¶ 59, 63, 105, 111, 149, 158-162, 166, & 179)

## SUMMARY OF ARGUMENT

This Court should vacate the District Court's Order of dismissal and remand the case for further proceedings for several reasons.

First, the District Court erred by holding that Silva could not state a claim for relief based on Appellees' active interference with on-going litigation of civil rights claims. While Appellees are not required to provide additional materials or other resources, such as access to a legal library or a paralegal, to assist Silva once he has filed a civil rights claim in a court of law, they may not actively interfere or otherwise hinder his continued prosecution of claims by confiscating his personal legal materials and court documents, intercepting legal filings, and excessively transferring him between facilities. Silva's right to access, ensconced in the First, Fifth, Eighth, and Fourteenth Amendments to the U.S. Constitution, may not be unreasonably restricted by prison officials. Silva has also adequately pleaded all of the elements necessary to state a claim for relief for an access to courts claim.

Second, the District Court erred by holding that Silva did not adequately plead a retaliation claim. To the contrary, Silva's allegations are identical to the "archetype" retaliation claim, and the District Court evidently imposed a pleading standard requiring extraordinary detail.

Third, the District Court erred because it held that Silva could not possibly amend the complaint to remedy the defects noted in the District Court's Order of dismissal. All of the District Court's problems with the First Amended Complain can be easily remediated by allowing Silva to file an amended complaint. Accordingly, this Court should vacate the Order of dismissal and remand this case for further proceedings.

## ARGUMENT

**I.    SILVA HAS A CONSTITUTIONAL RIGHT TO MAINTAIN HIS PREVIOUSLY FILED CIVIL AND CRIMINAL ACTIONS WITHOUT INTERFERENCE FROM PRISON OFFICIALS, AND HE HAS STATED A VALID ACCESS TO JUSTICE CLAIM BASED ON PAST INTERFERENCE.**

### A.    Standard of Review

The Court reviews *de novo* a district court's determination of whether a party has stated a valid claim for relief.  See Coto Settlement v. Eisenberg, 593 F.3d 1031, 1034 (9th Cir. 2010).  *De novo* review applies to a dismissal for failure to state a claim even where the dismissal is the result of a district court's *sua sponte* review pursuant to the Prison Litigation Reform Act, 28 U.S.C. § 1915(e), and the applicable standard of review is the same as for a dismissal pursuant to Fed. R. Civ. P. 12(b)(6).  See Byrd v. Maricopa County Sheriff's Dep't, 565 F.3d 1205, 1212 (9th Cir. 2009); Huftile v. Miccio-Fonseca, 410 F.3d 1136, 1138 (9th Cir. 2005).

### B.    Silva Has a Constitutional Right to Maintain His Actions After Filing Without Active Interference by the Appellees.

The District Court's dismissal of Silva's access to justice claims was based on a two assumptions—that there is no constitutional right to maintain a court action through conclusion, and that prison officials are immune from responsibility for active inference with an on-going court action.  (Dkt. 13 at 3-4)   Both assumptions are incorrect.  The District Court's dismissal without leave to amend

was premised solely on these two erroneous assumptions of law, and therefore this Court should vacate the dismissal and remand for further proceedings.

In dismissing the access to justice claims without leave to amend, the District Court cited Lewis v. Casey, 518 U.S. 343 (1996), for the proposition that prisoners only have the right to file an initial complaint, and that prisoners have no access to justice rights thereafter. (Dkt. 13 at 3-4) In the section cited by the District Court that distinguishes prior language from Bounds v. Smith, 430 U.S. 817 (1977), the Lewis Court was concerned with whether prisoners have an affirmative right to legal assistance or access to legal libraries to further their legal actions. See Lewis, 518 U.S. at 346-47. The United States Supreme Court held that the affirmative duty of prison officials to provide adequate legal assistance or materials only extends through the filing of a complaint, and the Court refused to impose additional requirements that would "effectively . . . demand permanent provision of counsel." Id. at 354. Put another way, "Bounds did not create an abstract, freestanding right to a law library or legal assistance." Id. at 351.

The majority of the Lewis decision, however, focused on the requirement that a prisoner allege an "actual injury" to state a valid access to courts claim. See id. at 348-49. And although the Lewis Court rejected any statement in Bounds that expanded the right of access to courts beyond its historical antecedents, see 518 U.S. at 354, the Court specifically recognized the long-standing prohibition against

12

"*actively interfering* with inmates' attempts to prepare legal documents . . . or file them." Id. at 350 (emphasis added) (citing Johnson v. Avery, 393 U.S. 483, 484, 489-90 (1969), and Ex parte Hull, 312 U.S. 546, 547-49 (1941)); see also id. at 378-82 (Thomas, J., concurring) (distinguishing negative rights preventing prisons from "imposing arbitrary obstacles" to inmate court access from attempts to "impose any affirmative obligations . . . to improve the prisoners' chances of success"). The Ninth Circuit has extended this reasoning to apply to official acts that "hinder" efforts to pursue a nonfrivolous claim. See Phillips v. Hust, 477 F.3d 1070, 1076 (9th Cir. 2007) (holding arbitrary denial of access to a comb-binding machine sufficient to assert "actual injury" for access to court claim), vacated on other grounds, 129 S. Ct. 1036 (2009)); see also Kensu v. Haigh, 87 F.3d 172, 175 (6th Cir. 1996) ("Prison officials may not erect any barriers that impede an inmate's access to the courts.").

Even though prisoners are not necessarily entitled to affirmative legal assistance once a complaint has been filed, they do have the right to be allowed to see a complaint through to conclusion without active interference from prison officials. See Lewis, 518 U.S. at 350.

> [A]ccess to the courts means the opportunity to prepare, serve and file whatever pleadings or other documents are necessary or appropriate in order to commence or prosecute court proceedings . . . , or to assert and sustain a defense therein, and to send and receive

> communications to and from judges, courts and lawyers
> concerning such matters.

Id. at 384 (Thomas, J., concurring) (quoting Hatfield v. Bailleaux, 290 F.2d 632, 637 (9th Cir. 1961). Additionally, prisoners have a right to pursue a direct appeal of any criminal conviction. See id. at 354(majority opinion).

This Circuit, as well as every other circuit court that has addressed the issue of prison officials confiscating or destroying legal materials, has held such conduct may establish a prima facie case for an access to courts claim. See Vigliotto v. Terry, 873 F.2d 1201, 1202 (9th Cir. 1989); see also Zilich v. Lucht, 981 F.2d 694, 695 (3d Cir. 1992); Green v. Johnson, 977 F.2d 1383, 1389-90 (10th Cir. 1992); Simmons v. Dickhaut, 804 F.2d 182, 183-84 (1st Cir. 1986); Wright v. Newsome, 795 F.2d 964, 968 (11th Cir. 1986); Carter v. Hutto, 781 F.2d 1028, 1031-32 (4th Cir. 1986); Tyler v. "Ron" Deputy Sheriff or Jailor/Custodian of Prisoners, 574 F.2d 427, 429 (8th Cir. 1978); Hiney v. Wilson, 520 F.2d 589, 591 (2d Cir. 1975); Sigafus v. Brown, 416 F.2d 105, 107 (7th Cir. 1969). Those courts have found active interference by prison officials violates prisoners' rights to due process and free speech. See, e.g., Snyder v. Nolan, 380 F.3d 279, 290-91 (7th Cir. 2004); Tyler, 574 F.2d at 428-29; Hiney, 520 F.2d at 591. In short, an access to courts claim may arise from either the positive right to provision of affirmative assistance with preparing an initial pleading (e.g. legal libraries and legal assistants), or from the negative right prohibiting active interference with legal actions at any stage

14

(e.g. confiscation of legal materials and interception of documents intended to be filed).  See Snyder, 380 F.3d at 290-91.

The District Court confused Silva's negative right to non-interference by prison officials in his on-going actions with Silva's affirmative right to be provided legal assistance to help him adequately plead a new complaint.  In holding that Silva has no right to pursue claims once filed in court, the District Court departed from the fundamental proposition, widely accepted by other courts that have looked at the issue, that everyone—prisoner or otherwise—has a First Amendment right to litigate those claims to conclusion.  See Lewis, 518 U.S. at 384 (Thomas, J., concurring); Snyder, 380 F.3d at 290-91.  Silva's rights to free speech and due process were unlawfully obstructed by prison officials who set up affirmative roadblocks to litigation by confiscating and later destroying Silva's legal papers and personal legal reference materials, intercepting and diverting legal documents intended to be filed in court, and excessively transferring Silva to different prison cells or facilities.  (Dkt. 12 at ¶¶ 25-26, 28-29, 33-34, & 40-42)

In this case, the District Court's categorical denial of any possible post-complaint right of access to courts is fundamentally unsound and legally erroneous.  The dismissal should therefore be vacated because Silva has a First Amendment and due process right to litigate his legal actions without active interference from prison officials.

## C.  Silva Suffered Actual Injury as a Result of Appellees' Actions and Alleged Facts Sufficient to Maintain His Access to Courts Claim.

The watershed holding of <u>Lewis v. Casey</u> is the requirement that an access to courts plaintiff plead "actual injury."  <u>See</u> <u>518 U.S. at 351-53</u>.  The United State Supreme Court has also divided access to courts claims into two main categories. The first group includes "forward-looking" claims that prison officials are "presently denying an opportunity to litigate."  <u>Christopher v. Harbury, 536 U.S. 403, 413 (2002)</u>.  The second group includes "backward-looking" claims that "allegedly have caused the loss or inadequate settlement of a meritorious case."  <u>Id. at 413-14</u>.  In both groups, a plaintiff must establish an arguable underlying claim and identify the specific remedy sought.  <u>See</u> <u>id. at 414-16</u>.

Silva asserted both forward- and backward-looking access to courts claims because he seeks remedies for cases that have already been dismissed and also requests prospective injunctive relief for return of legal documents and monetary damages for lost legal property.  (<u>Dkt. 12 at ¶¶ 40-44</u> & p. 7)  His pleadings also identify the bases for the underlying claims, including both the bases for previously dismissed complaints and the factual predicate of on-going wrongs he seeks to remedy.  (<u>Id.</u>)

Given that Silva has a constitutional right to litigate constitutional claims free from active interference by prison officials, and because Silva pleaded facts sufficient to demonstrate actual injury and support a claim for relief, the District

Court's dismissal finding that an access to courts claim cannot exist after an initial pleading has been filed was erroneous. This Court should thus vacate the dismissal and remand the access to courts claim back to the District Court.

## II. SILVA ADEQUATELY STATED A CLAIM FOR RELIEF BASED ON APPELLEES' RETALIATORY CONDUCT.

### A. Standard of Review

This Court reviews *de novo* the District Court's dismissal for failure to state a valid claim for relief. See Coto Settlement, 593 F.3d at 1034; Byrd, 565 F.3d at 1212; Huftile, 410 F.3d at 1138.

### B. The First Amended Complaint Adequately States an Unlawful Retaliation Claim Under Any Pleading Standard.

In dismissing Silva's retaliation claim, the District Court stated that: "Plaintiff fails to identify specific retaliatory acts carried out by specific defendants. Further, Plaintiff fails to describe precisely for what conduct he experienced retaliatory acts. Plaintiff's allegations [regarding retaliation] are vague and conclusory and therefore fail to state a claim." (Dkt. 13 at 4) In reaching this conclusion, the District Court either ignored the allegations supporting Silva's claim, or else imposed an excessively detailed pleading standard, because the First Amended Complaint adequately states a claim for relief based on retaliation.

Prisoners have a fundamental First Amendment right to file prison grievances and pursue civil rights litigation. See Rhodes v. Robinson, 408 F.3d

17

559, 567 (9th Cir. 2005). Actions taken in retaliation to a prisoner exercising First Amendment rights through civil rights litigation constitute separate constitutional violations. See id. A prisoner retaliation claim consists of five elements: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Id. at 567-68. Retaliatory conduct need not completely silence grievances or civil rights litigation, and a plaintiff need only show that such conduct "would chill or silence a person of ordinary firmness from future First Amendment activities. Id. at 568 (quoting Mendocino Envtl. Ctr. v. Mendocino County, 192 F.3d 1283, 1300 (9th Cir. 1999).

In Rhodes, the plaintiff had stated "the very archetype of a cognizable First Amendment retaliation claim" by alleging arbitrary confiscation, withholding, and destruction of property; threats of transfer to other facilities; and assaults in an effort to chill the prisoner's attempts to file prison grievances and litigate civil rights claims. See id. The Rhodes Court found that the defendants could not "seriously contest the fact that [the prisoner's] complaint satisfies these pleading requirements." See id.

In the instant case, the District Court asserted that Silva's retaliation claim was limited to alleging retaliation "for his efforts to expose [Defendants']

18

misconduct and law violations." (Dkt. 12 at ¶ 46; Dkt. 13 at 4) In reaching this conclusion, the District Court evidently ignored the prior paragraph of Silva's retaliation claim, which incorporates by reference the preceding factual allegations used to establish Silva's RICO and access to courts claims. (Dkt. 12 at ¶ 45) For example, even though Silva alleged in detail that Appellees intentionally seized his legal documents and transferred him repeatedly among various cells and facilities for the purpose of influencing, delaying, and/or silencing Silva's litigation efforts and testimony, identifying specific acts by specific Defendants in efforts to chill litigation in specific cases (Dkt. 12 at ¶¶ 26, 29-30, 33-34, & 40-44), the District Court still found that Silva had not stated specific retaliatory acts or to what the retaliatory acts were responding.

The retaliatory conduct described in the First Amended Complaint, moreover, is nearly identical to the conduct described in Rhodes, which this Court found to be "the very archetype of a cognizable First Amendment retaliation claim." See 408 F.3d at 568.

Silva has even satisfied the heightened pleading requirements of Ashcroft v. Iqbal, which was decided after the District Court dismissed the present action, because he has pleaded sufficient facts to support facial plausibility, not just conclusory labels and a "formulaic recitation of the elements of a cause of action" which were fatal in Iqbal. See 129 S. Ct. 1937, 1949 (2009). His detailed account

of suits against the Appellees, followed closely in time by specific retaliatory acts of obstructing a legal filing and seizure of legal documents, as well as his repeated and arbitrary transfers (Dkt. 12 at ¶¶ 26, 29-30, 33-34, & 40-44), provide the necessary factual basis for a court to draw the "reasonable inference" of retaliation. See id. Furthermore, in Iqbal, the Supreme Court specifically cautioned that a plaintiff need *not* plead "detailed factual allegations." See id. The District Court's criticism that Silva had "fail[ed] to identify specific retaliatory acts carried out by specific defendants [or] to describe precisely for what conduct he experienced retaliatory acts" (Dkt. 13 at 4) improperly moves beyond Federal Rule of Civil Procedure 8's or Iqbal's requirements and into the realm of "detailed factual allegations. See, e.g., Masters v. Gilmore, 663 F. Supp. 2d 1027, 1047 (D. Colo. 2009) (holding plaintiff not required to provide specific dates of alleged wrongful acts and omissions by defendant post-Iqbal); Reyes v. Fairfield Props., 661 F. Supp. 2d 249, 266 (E.D.N.Y. 2009) (stating that only minimal facts sufficient to demonstrate plausibility are necessary to maintain a post-Iqbal retaliation claim and that allegations specifically supporting a causal connection are not necessary to survive a motion to dismiss).

It is unclear what additional detail, short of offering a signed admission by the Appellees, Silva could plead in support of his retaliation claim. His First Amended Complaint sets forth allegations that meet the pleading requirements of

Iqbal and mirror the prototypical retaliation claim set forth in Rhodes. The dismissal should be vacated so he may continue litigating this claim.

## III. SILVA CAN AMEND THE COMPLAINT TO FIX ANY PLEADING DEFICIENCIES, AND THEREFORE THE DISTRICT COURT ERRED IN DISMISSING WITHOUT LEAVE TO AMEND.

### C. Standard of Review

For dismissals *without* leave to amend, the Court reviews *de novo* to determine if the complaint could have been saved by any amendment, see Moss v. U.S. Secret Serv., 572 F.3d 962, 972 (9th Cir. 2009), and it review other stated reasons for a dismissal for abuse of discretion. See, e.g., Adams v. Cal. Dep't of Health Servs., 487 F.3d 684, 688 (9th Cir. 2007).

### D. Silva Was Not Given Notice of Alleged Pleading Deficiencies and an Opportunity to Amend His Pleading to Correct Those Deficiencies.

The District Court dismissed Silva's First Amended Complaint without leave to amend. The sole reason given by the District Court for barring Silva from amending his pleading was that its "discretion to deny or grant leave to amend is particularly broad where Plaintiff has previously been permitted to amend his complaint. (Dkt. 13 at 5 (citing Sisseton-Wahpeton Sioux Tribe v. United States, 90 F.3d 351, 355 (9th Cir. 1996))) This Court, however, has abandoned the

standard stated in Sisseton[3] and consistently holds that leave to amend "should be granted with 'extreme liberally.'" Moss, 572 F.3d at 972. "Dismissal without leave to amend is improper unless it is clear, upon de novo review, that the complaint could not be saved by any amendment." Id. (quotations omitted); see also Knappenberger v. City of Phoenix, 566 F.3d 936, 942 (9th Cir. 2009) (stating that a court abuses its discretion in denying leave to amend unless it "'determines that the pleading could not possibly be cured by the allegation of other facts'" (quoting Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000))); Lira v. Herrera, 427 F.3d 1164, 1169-70 (9th Cir. 2005) (holding dismissal of prisoner civil right complaint without leave to amend erroneous "unless it is clear, upon *de novo* review, that the complaint could not be saved by any amendment"). This rule flows directly from Federal Rule of Civil Procedure 15's basic admonition, applicable to all civil cases, that "leave to amend be freely granted 'when justice so requires.'" Lopez, 203 F.3d at 1127; see also Fed. R. Civ. P. 15(a). Moreover, "[a] pro se litigant must be given leave to amend his or her complaint, and some notice of its deficiencies, unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment." Cato v. United States, 70 F.3d 1103, 1106 (9th Cir. 1995).

---

[3]     Sisseton has been cited in very few cases and appears to be an anomaly in light of substantial case law before and after supporting liberal allowance of amended pleadings.

In certain circumstances, dismissal without leave to amend may be warranted for essentially equitable reasons. See United States v. SmithKline Beecham, Inc., 245 F.3d 1048, 1052 (9th Cir. 2001). The main factors considered, apart from futility of amendment which was discussed above, are "presence or absence of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments, [and] undue prejudice to the opposing party." Id.

The District Court did *not* hold that the pleading deficiencies in Silva's First Amended Complaint were incurable, or that it would otherwise be futile to amend the pleadings. (Dkt. 13 at 5) The District Court also failed to afford Silva prior notice of the alleged pleading deficiencies and an opportunity to amend, as required by Cato. See 70 F.3d at 1106.[4] Instead, the District Court simply stated that it had greater discretion because Silva had already amended his Complaint once. (Dkt. 13 at 5) That is not a sufficient basis for dismissing the entire action, particularly here where the deficiencies described by the District Court are primarily based on vagueness or failure to specify additional facts. (Dkt. 13)

The premier example of the District Court's specificity dismissals is the dismissal of Silva's retaliation claim, for which the District Court explained: "Plaintiff fails to identify specific retaliatory acts carried out by specific

---

[4]    The sole exception was notice that Silva failed to file his original Complaint on a preapproved form pursuant to local rule. (Dkt. 7 at 3-4)

defendants. Further, Plaintiff fails to describe precisely for what conduct he experienced retaliatory acts. Plaintiff's allegations [regarding retaliation] are vague and conclusory and therefore fail to state a claim." (Dkt. 13 at 4) It is hard to imagine a claim easier to fix by allowing Silva to file an amended pleading. The District Court simply wanted more information about specific retaliatory acts and the motive for the retaliation, and Silva was prepared to recount the relevant facts in great detail. (Dkt. 21)

Similarly, the District Court dismissed Silva's RICO claim due to other perceived deficiencies that are easily cured by an amended pleading. (Dkt. 13 at 2-3) The District Court held that Silva did not allege at least two predicate acts apart from kidnapping pursuant to illegal prison transfers, which the District Court held did not constitute kidnapping.[5] (Dkt. 13 at 2-3) The District Court further implied that Silva failed to allege injury to business or property.[6] (Dkt. 13 at 3) As with the retaliation claim, Silva can easily cure these alleged deficiencies by filing an

---

[5] Silva had also alleged various acts of mail fraud, wire fraud, and witness tampering, which the District Court did not mention in any way. (Dkt. 12 at ¶¶ 20-27, 29-31, & 33-35)

[6] The District Court's final comment on the RICO claim was that governmental entities cannot violate RICO because they are incapable of forming malicious intent. (Dkt. 13 at 3) It is unclear what effect, if any, this statement had on the District Court's decision to dismiss because none of the Appellees are governmental entities. They are all individual persons or corporations. (Dkt. 12 at 2 through 2-B)

amended complaint describing predicate acts and injury to business or property in greater detail.

There also were no equitable reasons, such as undue delay, bad faith, dilatory motive, or undue prejudice to the opposing party, to deny leave to amend, see SmithKline Beecham, 245 F.3d at 1052, nor did the District Court mention any such reason. (Dkt. 13 at 3) Although the District Court mentioned that one amendment had already been allowed to correct a deficiency, it was not a substantive correction because the deficiency was failure to file on a pre-approved court form.

For all of these reasons, the District Court's dismissal without leave to amend was an abuse of discretion. In the interests of justice, see Fed. R. Civ. P. 15(a), Silva, as a self-represented prisoner, should be notified of alleged deficiencies and given an opportunity to resolve those deficiencies by amending his complaint. Appellees, who have not made an appearance in the District Court, would not be unfairly prejudiced. Accordingly, this Court should vacate the part of the Order of dismissal denying leave to amend and remand this action to the District Court so Silva may file an amended complaint.

## IV. SILVA SHOULD NOT BE PENALIZED WITH A "STRIKE" PURSUANT TO 28 U.S.C. § 1915(g).

Silva has already described a number of reasons why the District Court erred in dismissing his complaint without leave to amend, and this Court should

therefore remand this case for further proceedings.  Accordingly, Silva is entitled to have the District Court's § 1915(g) "strike" vacated upon remand to the District Court.  Failure to vacate the "strike" will make it substantially more difficult for Silva to exercise his constitutionally protected right to petition the government in the future because Silva only will be allowed to proceed *in forma pauperis* if he first establishes "imminent danger of serious physical injury."   See 28 U.S.C. § 1915(g).

## CONCLUSION

Silva has a constitutional right to litigate his actions without fear of interference by Defendants.  No coherent and logical legal system can possibly accept half a lawsuit is sufficient to achieve justice.  Silva is entitled to complete the full action, regardless of whether prison officials may restrict his access to law libraries or legal assistants.  Silva is also entitled to amend his complaint to correct alleged pleading deficiencies.  For all these reasons, the Court should vacate the dismissal without leave to amend and remand this case back to the District Court

for further proceedings. Additionally, the Court should vacate the District Court's entry of the 28 U.S.C. § 1915(g) "strike" against Silva.

RESPECTFULLY SUBMITTED this 8th day of April, 2010.

SNELL & WILMER L.L.P.

By     s/Robert A. Bernheim
     Andrew M. Jacobs
     Robert A. Bernheim
     One South Church Avenue, Suite 1500
     Tucson, AZ  85701
     Attorneys for Plaintiff/Appellant

## <u>STATEMENT OF RELATED CASES</u>

Pursuant to Ninth Circuit Rule 28-2.6, Appellant Matthew G. Silva states

that he is aware of no related cases pending in this Court.

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 8, 2010, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECP users and that service will be accomplished by the appellate CM/ECF system.

I further certify that 4 paper format copies of the Excerpts of Records for the OPENING BRIEF OF APPELLANT MATTHEW G. SILVA were sent via FedEx, next day delivery, addressed to:

> Molly C. Dwyer
> Clerk of the Court
> UNITED STATES COURT OF APPEALS
> FOR THE NINTH CIRCUIT
> 95 7th Street
> San Francisco, CA 94103-1526

and that 2 copies of the foregoing Excerpts of Records for the OPENING BRIEF OF APPELLANT MATTHEW G. SILVA were mailed, first-class, postage pre-paid, addressed to the following:

> Robert M. McKenna
> Andrea Vingo
> OFFICE OF WASHINGTON ATTORNEY GENERAL,
> CORRECTIONS DIVISION
> PO Box 40116
> Olympia, WA 98504-0116
> Attorneys for Defendants/Appellees

April 8, 2010             _____ s/Robert A. Bernheim _____
                                       Robert A. Bernheim

11243759

### CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMTIATION, TYPEFACE REQUIRMENTS, AND TYPE STYLE REQUIREMENTS

1.    This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

    ☒ this brief contains 5,327 words, excluding parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

    ☐ this brief uses a monospaced typeface and contains _____ lines of text, excluding parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

    ☒ this brief has been prepared in a proportionately spaced typeface using Microsoft Word 2003 14 point Times New Roman font, *or*

    ☐ this brief has been prepared in a monospaced typeface using _____ _____.

April 8, 2010                   s/Robert A. Bernheim

                                 Robert A. Bernheim
                                 Attorney for Plaintiff/Appellant