# No. 08-15620

## IN THE UNITED STATES COURT OF APPEALS

## FOR THE NINTH CIRCUIT

| | |
|---|---|
| MATTHEW G. SILVA,<br><br>              Plaintiff/Appellant,<br><br>v.<br><br>SARA J. OLSON; et al.,<br><br>              Defendants/Appellees. | Appeal from the United States District Court for the District of Arizona<br><br>No. 2:07-CV-061696-JAT-ECV |

# REPLY BRIEF OF APPELLANT MATTHEW G. SILVA

Robert A. Bernheim
SNELL & WILMER L.L.P.
One South Church Avenue
Suite 1500
Tucson, AZ  85701
(520) 882-1200
Attorneys for Plaintiff/Appellant

11620291

# TABLE OF CONTENTS

**Page**

ARGUMENT ....................................................................................................2

I.  APPLICABLE STANDARDS OF REVIEW. ....................................2

II.  THE *IN FORMA PAUPERIS* STATUTE (§ 1915) DOES NOT
BAR THE PRESENT APPEAL. ........................................................3

III.  SILVA PLEADED A VALID ACCESS TO COURTS CLAIM
STEMMING FROM APPELLEES' ACTIVE
INTERFERENCE WITH HIS ONGOING LAWSUITS. ...................5

IV.  SILVA MUST BE GIVEN NOTICE OF DEFICIENCIES AND
LEAVE TO AMEND PLEADINGS DISMISSED FOR
CURABLE DEFECTS LIKE LACK OF SPECIFICITY AND
VAGUENESS. ..................................................................................10

V.  SILVA'S CLAIMS ARE NOT FRIVOLOUS OR
IMPLAUSIBLE AND SHOULD NOT BE DISMISSED SUA
SPONTE UNDER *IQBAL* OR § 1915(D). .......................................13

VI.  THERE IS NO QUALIFIED IMMUNITY FOR PRIVATE
PRISON EMPLOYEES, FOR ACTIONS SEEKING
INJUNCTIVE RELIEF, OR WHERE A DEFENDANT HAS
VIOLATED ESTABLISHED CONSTITUTIONAL RIGHTS. .......16

CONCLUSION ..............................................................................................18

CERTIFICATE OF SERVICE .....................................................................20

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME
LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE
REQUIREMENTS .......................................................................................22

i

# FEDERAL CASES

Adepegba v. Hammons,
    103 F.3d 383, 387-88 (5th Cir.) ............................................................4

Ashcroft v. Iqbal,
    129 S. Ct. 1937 (2009) .......................................................................13

Beaird v. Gonzales,
    495 F. Supp. 2d 81 (D.D.C 1997) ................................................. 15, 16

Bell Atlantic Corp. v. Twombly,
    550 U.S. 544 (2007) ...................................................................... 2, 13

Bounds v. Smith,
    430 U.S. 817, 828 (1977) .................................................................6, 8

Campbell v. Davenport Police Dep't,
    471 F.3d 952, 952 (8th Cir. 2006) .......................................................4

Carter v. Hutto,
    781 F.2d 1028, 1031-32 (4th Cir. 1986) ..............................................6

Cato v. United States,
    70 F.3d 1103, 1106 (9th Cir. 1995) ............................................. 12, 16

Christopher v. Harbury,
    536 U.S. 403 (2002) .............................................................................6

Denton v. Hernandez,
    504 U.S. 25, 31 (1992) .......................................................................14

Deputy Sheriff or Jailor/Custodian of Prisoners,
    574 F.2d 427, 429 (8th Cir. 1978) .......................................................6

Forte v. Sullivan,
    935 F.2d 1, 2 (1st Cir. 1991) .............................................................14

Frazier v. Dubois,
    922 F.2d 560, 562 (10th Cir. 1992) ...................................................14

Green v. Johnson,
    977 F.2d 1383, 1389-90 (10th Cir. 1992) ............................................6

Hiney v. Wilson,
520 F.2d 589, 591 (2d Cir. 1975)............................................................................6

Jeffers v. Gomez,
267 F.3d 895, 910 (9th Cir. 2001) ........................................................................17

Jennings v. Natrona County Detention Ctr. Med. Facility,
175 F.3d 775, 779-80 (10th Cir. 1999) ...................................................................4

John L. v. Adams,
969 F.2d 228, 235 (6th Cir. 1992) ..........................................................................6

Johnson v. Stovall,
233 F.3d 486, 489-90 (7th Cir. 2000) ...................................................................14

Knappenberger v. City of Phoenix,
566 F.3d 936, 942 (9th Cir. 2009) ........................................................................12

Lewis v. Casey,
518 U.S. 343, 355 (1996)..................................................................................6, 7

Lira v. Herrera,
427 F.3d 1164, 1169-70 (9th Cir. 2005) ...............................................................12

Los Angeles Police Protective League v. Gates,
995 F.2d 1469, 1472 (9th Cir. 1993) .....................................................................17

Martinez-Serrano v. INS,
94 F.3d 1256, 1259 (9th Cir. 1996) .......................................................................13

Masters v. Gilmore,
663 F. Supp. 2d 1027, 1047 (D. Colo. 2009)........................................................13

McDonald v. Smith,
472 U.S. 479 (1985)...............................................................................................6

Moss v. U.S. Secret Serv.,
572 F.3d 962, 972 (9th Cir. 2009) ........................................................................12

Neitzke v. Williams,
490 U.S. 319, 325 (1989)................................................................................. 2, 14

iii

Reyes v. Fairfield Props.,
    661 F. Supp. 2d 249, 266 (E.D.N.Y. 2009) .........................................................13

Rhodes v. Robinson,
    408 F.3d 559, 567-68 (9th Cir. 2005) ................................................................7,8

Richardson v. McKnight,
    521 U.S. 399, 412 (1997) .....................................................................................16

Sigafus v. Brown,
    416 F.2d 105, 107 (7th Cir. 1969) .........................................................................6

Simmons v. Dickhaut,
    804 F.2d 182, 183-84 (1st Cir. 1986)....................................................................6

Snyder v. Nolan,
    380 F.3d 279, 290-91 (7th Cir. 2004) ................................................................5, 6

Thompson v. Drug Enforcement Administration,
    492 F.3d 428, 432-33 (D.C. Cir. 2007)..................................................................4

Tyler v. "Ron" Deputy Sheriff or Jailor/Custodian of Prisoners,
    574 F.2d 427, 429 (8th Cir. 1978)..........................................................................6

Vigliotto v. Terry,
    873 F.2d 1201, 1202 (9th Cir. 1989) ......................................................................6

Wilson v. Rackmill,
    878 F.2d 772, 774-75 (3rd Cir. 1989)...................................................................14

Wright v. Newsome,
    795 F.2d 964, 968 (11th Cir. 1986) .......................................................................6

Zilich v. Lucht,
    981 F.2d 694, 695 (3d Cir. 1992)...........................................................................6

## FEDERAL STATUTES

28 U.S.C. § 1915(d) .......................................................................... 13, 16

28 U.S.C. § 1915(g) ....................................................................... 3, 4, 18

## FEDERAL RULES

Fed. R. App. P. 32.1(a) ........................................................................14

Fed. R. App. P. 24(a)(3) ........................................................................4

Fed. R. App. P. 32(a)(5) .......................................................................22

Fed. R. App. P. 32(a)(6) .......................................................................22

Fed. R. App. P. 32(a)(7)(B) ..................................................................22

This entire appeal can be summarized with two maxims that demonstrate why Silva should prevail and be allowed to further pursue his claims in the District Court. First, prison officials who actively infer with a prisoner's efforts to pursue civil rights claims, whether by confiscating and destroying the prisoner's legal papers or intercepting legal pleadings so they cannot be filed or making the prisoner endure a marathon of transfers to new cells and facilities, violate the prisoner's constitutionally guaranteed right of access to courts. Second, a prisoner appearing *pro se* must be given notice of alleged pleading deficiencies and leave to file an amended complaint when, as here, the alleged deficiencies are patently curable.

These two maxims, the first a substantive legal right and the second a procedural right, are merely the most apparent grounds justifying reversal of the District Court's dismissal and remand for further proceedings on all of Silva's claims. The maxims are also related to the same overarching principle: that the courts must be available to all persons who seek to protect their constitutional rights, without any fear of state interference to obstruct and effectively nullify judicial availability.

Silva's First Amended Complaint, additionally, did not suffer any deficiency on the other grounds offered by the District Court. His Complaint meets the applicable pleading standards under Supreme Court precedent and statutory law.

1

Finally, Appellees' affirmative defenses that Silva is barred from proceeding *in forma pauperis* and that they are shielded by qualified immunity. Those defenses merely represent Appellees' continuing efforts to assure Silva's civil rights claims never come up for substantive consideration, and Appellees fail to demonstrate why this Court should *sua sponte* accept those defenses as inevitable.

## ARGUMENT

## I. APPLICABLE STANDARDS OF REVIEW

Appellees apparently concede that this Court reviews *de novo* the dismissal pursuant Rule 12(b)(6) while accepting all facts alleged in the complaint as true and construing the complaint in the light most favorable to Silva, and that this Court reviews regarding the District Court's refusal of leave to amend for an abuse of discretion. (O.B. at 11, 17, 21; A.B. at 13-14)

However, Appellees incorrectly argue that this Court "must apply a less deferential standard" than the Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), plausibility standard governing the specificity of initial pleadings. (A.B. at 14 (citing Neitzke v. Williams, 490 U.S. 319, 325 (1989))) Nietzke provides no support for applying a "less deferential standard," and this Court should apply the normal applicable standards. To the extent that Appellees argue Twombly provides an applicable standard of review, they are incorrect, although Twombly

2

does offer one of the substantive legal standards that this Court looks for during its *de novo* review of the District Court's dismissal.

## II.     THE *IN FORMA PAUPERIS* STATUTE (§ 1915) DOES NOT BAR THE PRESENT APPEAL

Appellees misleadingly argue that this appeal is precluded from continuing with this appeal because he has accrued three or more "strikes" under 28 U.S.C. § 1915(g) and that Silva is not "under imminent danger of serious physical injury." (A.B. 15-17)  The District Court already considered this issue when Silva first filed the present action in 2007.  (Dkt. 6; Dkt. 7 at 1)  Silva persuaded the District Court then that he was entitled to *in forma pauperis* status at that time, and Appellees make no attempt to explain why the District Court should be deemed to have erred on this issue.   They cite five cases as "strikes" and assume those cases automatically bar this appeal.  When the case was first filed in the District Court in 2007, however, one of the orders of dismissal cited by Appellees did not even exist.  (SER000163 (order dismissing <u>Silva v. King County, et al.</u>, Case No. C08-1447-RSM (W.D. Wash. Jan. 29, 2009))).

The four other dismissals were considered by the District Court in 2007, and the District Court agreed with Silva that two of those cases could not be counted because they were on appeal and no mandate had issued in either appeal.  (Dkt. 7 at 1; E.R. 000169-71 (6/18/2008 mandate for appeal of <u>Silva v. Bush, et al.</u>, Court of Appeals No. 07-35418, District Court No. CV-06-00984-JLR); E.R. 000172-73

(5/18/2010 mandate for appeal of <u>Silva v. Goddard, et al.</u>, Court of Appeals No. 07-15759, District Court No. CV-06-2289- JAT))  <u>See, e.g.</u>, <u>Thompson v. Drug Enforcement Administration</u>, 492 F.3d 428, 432-33 (D.C. Cir. 2007); <u>Campbell v. Davenport Police Dep't</u>, 471 F.3d 952, 952 (8th Cir. 2006); <u>Jennings v. Natrona County Detention Ctr. Med. Facility</u>, 175 F.3d 775, 779-80 (10th Cir. 1999); <u>Adepegba v. Hammons</u>, 103 F.3d 383, 387-88 (5th Cir.).  Silva thus only had two "strikes" at the time the District Court granted him *in forma pauperis* status, and he still had only two "strikes" on March 14, 2008 when he filed his Notice of Appeal in this case.  (Dkt. 1; Dkt. 7 at 1; Dkt. 15)

Once Silva filed his notice of appeal, and because the District Court granted Silva *in forma pauperis* status and never revoked that status nor certified the appeal was taken in bad faith, Silva was automatically entitled continue proceeding *in forma pauperis*.  <u>See</u> Fed. R. App. P. 24(a)(3).  (Dkt. 3)  Appellees offer no authority which would cause Silva to lose his previously granted *in forma pauperis* status because additional § 1915(g) "strikes" come into existence during the pendency of the appeal.  Section 1915(g) itself suggests that later-arising "strikes" should not be counted because it only instructs courts to take "**prior** occasions" of dismissals for frivolousness, maliciousness, or failure to state a claim into consideration.  <u>See</u> 28 U.S.C. § 1915(g).

4

Finally, even if this Court were to deem Silva barred from proceeding *in forma pauperis*, which Silva believes would be erroneous, the correct remedy is for this Court to deny that status and give Silva an opportunity to pay the full appellate filing fee, not to dismiss the appeal outright.

## III. SILVA PLEADED A VALID ACCESS TO COURTS CLAIM STEMMING FROM APPELLEES' ACTIVE INTERFERENCE WITH HIS ONGOING LAWSUITS

Appellees' Answering Brief denies the existence of any right of access to courts beyond the narrow requirement that prisons supply legal materials or assistance that would enable a prisoner to research and discover potential civil rights claims and thereby draft a complaint or other initial pleading. (A.B. at 17-24)  Although law libraries and legal assistance may be the most frequently litigated aspect of the right of access to courts, it is not the sole embodiment of that right.  There are two sides to the access to courts right:  that which the State must do or provide (e.g., law libraries, legal assistants) versus that which the State must **not** do.  Appellees refuse to recognize the second line of access to courts cases and the broader scope of their protections against active interference.  The dichotomy of these two lines of cases is well explained by the Seventh Circuit in Snyder v. Nolan, 380 F.3d 279, 290-91 (7th Cir. 2004).

Appellees rely on the Bounds-Lewis line of cases that primarily consider what resources must be provided to a prisoner so as to permit meaningful access to

courts.  See Lewis v. Casey, 518 U.S. 343, 355 (1996); Bounds v. Smith, 430 U.S. 817, 828 (1977).  They ignore the line of cases beginning with McDonald v. Smith, 472 U.S. 479 (1985), which assure that no roadblocks are placed in the way of exercising the First Amendment Petition Clause.  See Snyder, 380 F.3d at 290-91; John L. v. Adams, 969 F.2d 228, 235 (6th Cir. 1992); see also Christopher v. Harbury, 536 U.S. 403 (2002) (outlining the various constitutional provisions from which the right of access to courts arises).  While the obligation to provide legal resources may end with the filing of an initial complaint, the obligation to not actively block the path to the courthouse does not.  See John L. at 235.  More specifically, allegations that legal materials have been confiscated and or that prison officials have otherwise actively interference with court filings set forth a long-established claim denial of access to courts.  See Vigliotto v. Terry, 873 F.2d 1201, 1202 (9th Cir. 1989); see also Zilich v. Lucht, 981 F.2d 694, 695 (3d Cir. 1992); Green v. Johnson, 977 F.2d 1383, 1389-90 (10th Cir. 1992); Simmons v. Dickhaut, 804 F.2d 182, 183-84 (1st Cir. 1986); Wright v. Newsome, 795 F.2d 964, 968 (11th Cir. 1986); Carter v. Hutto, 781 F.2d 1028, 1031-32 (4th Cir. 1986); Tyler v. "Ron" Deputy Sheriff or Jailor/Custodian of Prisoners, 574 F.2d 427, 429 (8th Cir. 1978); Hiney v. Wilson, 520 F.2d 589, 591 (2d Cir. 1975); Sigafus v. Brown, 416 F.2d 105, 107 (7th Cir. 1969).

Fully adopting the District Court's position below, Appellees are quite satisfied to believe that "[t]he Constitution only protects an inmate's right [to] present a civil rights complaint at the initial stage of the litigation." (A.B. at 17) Evidently, Appellees believe the initial stage of civil rights litigation should also be the last stage. It cannot be stressed enough that <u>Lewis v. Casey</u> derives from a complaint about the adequacy of prison libraries and other legal assistance. 518 U.S. at 346-48. Where the <u>Lewis</u> Court suggested that prisoners do not have a right "to litigate effectively once in court," <u>see</u> <u>Lewis</u> at 354, its comments were limited to provisioning prisoners with legal resources. While the <u>Lewis</u> Court did not want to create an expensive right to legal resources for prisoners that is unavailable to the non-incarcerated poor, it did not intend to say that prisoners should be prohibited from post-complaint participation with their legal actions. <u>See</u> <u>id.</u> at 384 (Thomas J., concurring) ("[A]ccess to the courts means the opportunity to prepare, serve and file whatever pleadings or other documents are necessary or appropriate in order to commence or prosecute court proceedings . . . , or to assert and sustain a defense therein, and to send and receive communications to and from judges, courts and lawyers concerning such matters.) Moreover, this Court has previously recognized that a valid claim for retaliation may exist based on interference with court access, without limitation to initial pleadings. <u>See</u>

Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005). A retaliation claim could not exist if prisoner court access was not constitutionally protected. See id.

However infatuated Appellees are with the hope that Lewis grants them carte blanche to seize post-complaint legal pleadings on the way to the courthouse or to squelch prisoners' efforts to support the claims in a complaint during the remainder of litigation, their stance violates the most basic concepts of a just legal system. However likely it may be that a pro se litigant will lose his or her case without access to a law library or legal assistance to draft a well-researched filing, that likelihood transforms into an absolute certainty of losing once the pro se litigant is prevented from litigating at all beyond the initial pleading stage. While the availability of law libraries and legal assistance have been construed as necessary for *meaningful* access to courts, see Bounds, 430 U.S. at 828, the Appellees here have quite literally denied Silva *actual* access to courts by confiscating legal materials that Silva intend to file and seizing his personal legal files. (Dkt. 12 at 4-A to 4-C; Dkt. 21 at ¶¶ 155-73, 186-92, 197, 202-11, 214-15) Meaningful access may be limited to initial pleadings, but prison officials should never interfere with actual access.

Appellees also suggest that "Silva did not plead with specificity that he was prevented from either preparing or filing any of his lawsuits . . . ." (A.B. at 22-23) Of course in saying this, Appellees are attempting to coax the Court into the

limited position that Silva's access to courts rights start and end with the filing an initial pleading, at which point Appellees are satisfied if Silva is forced to abandon that initial pleading. The number of lawsuits Silva has filed has nothing to do with the claims stated in this case apart from providing greater evidence of past interferences to support the plausibility of Silva's allegations. Only the cases mentioned in the First Amended Complaint are at issue at present, and Silva has adequately pled deprivation of access to courts. Silva alleged, among other things, that many boxes of his personal legal materials were confiscated (and later, as Silva has subsequently learned, destroyed), and later intended pleadings were confiscated too. (Dkt. 12 at ¶¶ 25-26, 33) The seizures resulted in loss of documentary evidence Silva intended to use, loss of Silva's formal objections he planned to file to oppose a magistrate judge's report and recommendations in <u>Silva v. King County, et al.</u>, Case No. C04-1484-JCC-MAT (W.D. Wash.), and dismissal of at least five other cases due to loss of related legal files.[1] (Dkt. 12 at ¶¶ 25, 29-33, 40-42)

---

[1]  In the proposed Second Amended Complaint, Silva outlined how Appellees prevented him from filing a direct appeal and various post-conviction motions in state court regarding the criminal case he was incarcerated on and confiscated his legal materials and transferred him while he was attempting to pursue civil rights claims in <u>Silva v. Gregoire</u>, C05-5731-RJB (E.D. Wash.) (Dkt. 21 at ¶¶ 90-101, 155-73, 186, 188-92, 196-97) His First Amended Complaint also alleged interference with two other federal civil rights cases. This was not a deliberate omission but instead was necessary due to restricted access to his prior legal

9

This Circuit, and all eight of the other circuit courts of appeal known to have addressed the issue, has previously concluded that active interference with a prisoner's ability to file documents with a court states an actionable claim for access to courts. In their wisdom, none of those courts have allowed the dangerous precedent of giving prison officials unfettered power to interfere once an initial pleading has been filed. Appellees ask this Court to give them that unfettered power, but rights guaranteed by the First Amendment Petition Clause must not be so easily muted. This Court should thus remand this claim to the District Court and allow Silva to fight to preserve his right to access the courts without interference.

## IV. SILVA MUST BE GIVEN NOTICE OF DEFICIENCIES AND LEAVE TO AMEND PLEADINGS DISMISSED FOR CURABLE DEFECTS LIKE LACK OF SPECIFICITY AND VAGUENESS

Apart from merely repeating the District Court's conclusory finding that the pleading "defects cannot be corrected," Appellees make no effort to explain why it would be impossible for Silva to cure any particular deficiency. (A.B. 30) The only "deficient" claim found by the District Court that could not be cured with an

---

filings. Unfortunately, due to seizure of Silva's legal materials, he is forced to recount particular instances of interference by rote memory, and he cannot precisely recall each and every interference or destroyed document. With discovery and time, he will undoubtedly be better positioned to recount all instances of interference.

10

amended complaint was the access to courts claim, which the District Court found did not exist as a matter of law.  (Dkt. 12 at 4 to 4-C; Dkt. 13 at 3-4)  As explained above, however, Silva properly pleaded a valid access to courts claim, and the District Court erred in dismissing that claim.

Every other claim in the First Amended Complaint was dismissed for stated reasons which, assuming *arguendo* to be true,[2] could all be cured by amendment. Silva's RICO claim was dismissed because the District Court believed he had not "allege[d] sufficient facts to establish a 'pattern of racketeering activity'" or "an injury to [Silva's] business or property."  (Dkt. 13 at 3)   A pleading defect consisting of failure to allege "sufficient facts" is obviously a defect that can be remedied with an amended pleading that offers more factual details in support of its claims, and Silva's proposed Second Amended Complaint is replete with additional factual details describing several predicate acts of racketeering activity and concrete financial harm.  (Dkt. 21 at ¶¶ 180-201)  According to the District Court, Silva's retaliation claim was dismissed because it "fail[ed] to describe precisely for what conduct [Silva] experienced retaliatory acts" and the allegations were therefore "vague and conclusory."  (Dkt. 13 at 4)  Again, a dismissal for failure to allege enough specific facts is obviously remediable in an amended

---

[2]     Silva also disagrees that any pleading deficiency ever existed for any claim. The First Amended Complaint offered sufficient factual allegations to state claims for relief and meet all pleadings standards that apply.

pleading, and Silva's proposed Second Amended Complaint offered much greater detail about his retaliation claims.[3] (Dkt. 21 at ¶¶ 117-144, 153-157, 163-179, 191, 220-227)

The District Court also made it quite clear that it believed it could deny Silva leave to amend because he had previously been allowed to amend the Complaint. (Dkt. 13 at 5) The District Court never reviewed any substantive claim in the original Complaint because it had not been filed on a form required by local rule, and Silva was never informed about any alleged pleading defect beyond the form used. (Dkt. 7 at 3-4)

The alleged pleading defects all related to specificity of the factual allegations and could easily be fixed by amendment, see Moss v. U.S. Secret Serv., 572 F.3d 962, 972 (9th Cir. 2009); Knappenberger v. City of Phoenix, 566 F.3d 936, 942 (9th Cir. 2009); Lira v. Herrera, 427 F.3d 1164, 1169-70 (9th Cir. 2005); and Silva was never given notice of and an opportunity to correct identified deficiencies. See Cato v. United States, 70 F.3d 1103, 1106 (9th Cir. 1995). The District Court's error in disallowing Silva leave to amend the complaint's allegations supporting the RICO and retaliation claims was therefore an abuse of

---

[3] Although Silva did not appeal dismissal of his state law conversion claim, that claim was dismissed for lack of subject-matter jurisdiction due to failure to allege an amount in controversy exceeding $75,000.00. (Dkt. 13 at 4-5) Silva had not alleged any amount in controversy, but that pleading defect could be fixed in amended complaint too.

discretion.  Silva is entitled to a remand of his RICO and retaliation claims so he may be allowed to correct the alleged deficiencies with an amended pleading.

**V.    SILVA'S CLAIMS ARE NOT FRIVOLOUS OR IMPLAUSIBLE AND SHOULD NOT BE DISMISSED SUA SPONTE UNDER _IQBAL_ OR § 1915(D)**

Appellees do not suggest that Silva has failed to plead facts sufficient to state a claim for relief for racketeering and retaliation, or that those claims are defective as a matter of law.  Appellees should be assumed to have waived any objections on those grounds.  See Martinez-Serrano v. INS, 94 F.3d 1256, 1259 (9th Cir. 1996) (stating arguments not raised in briefs are deemed waived.  Their only opposition to the racketeering and retaliation claims is their general disbelief of those claims.  They attack the believability of Silva's claims on two similar grounds:  implausibility of the pleading and frivolousness.  (A.B. at 26-29, 31-34) Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009), which expanded on the Supreme Court's decision in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), requires a complaint to plead sufficient facts supporting facial plausibility.  See Iqbal, 129 S. Ct. at 1949.  Plausibility is achieved by allegation of sufficient facts which would allow reasonable inferences supporting the claims.  See id.  Iqbal does not require "detailed factual allegations."  Id.; see also Masters v. Gilmore, 663 F. Supp. 2d 1027, 1047 (D. Colo. 2009) (holding plaintiff not required to provide specific dates of alleged wrongful acts and omissions by defendant post-Iqbal); Reyes v. Fairfield

Props., 661 F. Supp. 2d 249, 266 (E.D.N.Y. 2009) (stating that only minimal facts sufficient to demonstrate plausibility are necessary to maintain a post-Iqbal retaliation claim and that allegations specifically supporting a causal connection are not necessary to survive a motion to dismiss).

The frivolousness standard under 28 U.S.C. § 1915(d) is very similar to the Iqbal standard.  A claim is frivolous if it has no arguable basis in law or fact.  See Denton v. Hernandez, 504 U.S. 25, 31 (1992).  Appellees have focused on whether there is an arguable basis in fact, a standard that seeks to exclude "fantastic or delusional scenarios."  Nietzke v. Williams, 490 U.S. 319, 328 (1989).  Similar allegations have been found to state a non-frivolous claim for relief.  See, e.g., Smith v. Fla. Dep't Corrs., 2008 U.S. App. LEXIS 6420, at *5-6 (11th Cir. Mar. 25, 2008) (retaliatory transfers);[4] Johnson v. Stovall, 233 F.3d 486, 489-90 (7th Cir. 2000) (retaliatory attacks by prison officials); Frazier v. Dubois, 922 F.2d 560, 562 (10th Cir. 1992) (retaliatory transfers); Forte v. Sullivan, 935 F.2d 1, 2 (1st Cir. 1991) (conspiracy to alter trial transcripts); Wilson v. Rackmill, 878 F.2d 772, 774-75 (3rd Cir. 1989) (conspiracy to violate 5th Amendment rights at parole hearing).

---

[4]     Per Federal Rule of Appellate Procedure 32.1(a), a party may cite to an unpublished federal judicial opinion issued on or after January 1, 2007.

Tellingly, the Answering Brief contains only a single example of a parallel case for support, <u>Beaird v. Gonzales</u>, 495 F. Supp. 2d 81 (D.D.C 1997). (A.B. at 32). In <u>Beaird</u>, however, the plaintiffs merely alleged several unknown federal agents tampered with a prior court file resulting altered court documents. <u>Id.</u> at 83. The <u>Beaird</u> Court also pointed out that these allegations were unrelated to events forming the basis of the plaintiffs' complaint. <u>Id.</u> Silva's claims are significantly more specific than the <u>Beaird</u> claims and are supported by more than mere conclusory allegations, and his concrete factual allegations relate to the alleged conduct of individually identified defendants. (Dkt. 12; Dkt. 21) The remainder of Appellees' arguments merely regurgitate the broad language of <u>Twombly</u> and <u>Iqbal</u> and § 1915(d) before conclusorily announcing that Silva does not meet those pleading standards. This is not too surprising considering that Appellees have derisively reinterpreted Silva's plain and obvious supporting factual allegations to portray this case as one concerning a failure to make photocopies.[5] (A.B. at 20-22)

The final problem that plagues Appellees arguments about the sufficiency of the pleadings is that, even if the First Amended Complaint failed to provide the requisite specificity and plausibility for purposes of <u>Iqbal</u> and § 1915, and

---

[5] Though Silva did describe requesting photocopies in the original Complaint, he was obviously concerned with the fact that the documents sent for photocopying, including his objections to a magistrate's report and his only copies of various legal documents which were intended as evidence, were never returned to him. (Dkt. 1 at ¶¶ 25-34)

assuming the District Court had informed him of such (which it did not), Silva could still have remedied this problem if he were permitted to submit an amended pleading.  See Cato, 70 F.3d at 1106 (instructing courts to grant leave to amend when action dismissed under § 1915(d) unless complaint could not be cured). Silva never had that opportunity.  Once again, the District Court's refusal to give Silva leave to amend was an abuse of discretion.

## VI. THERE IS NO QUALIFIED IMMUNITY FOR PRIVATE PRISON EMPLOYEES, FOR ACTIONS SEEKING INJUNCTIVE RELIEF, OR WHERE A DEFENDANT HAS VIOLATED ESTABLISHED CONSTITUTIONAL RIGHTS

Qualified immunity is the second affirmative defense Appellees ask this Court to apply *sua sponte* based on the pleadings to affirm the dismissal.  As an initial matter, the qualified immunity defense does not apply to private prisons and their employees at all.  See Richardson v. McKnight, 521 U.S. 399, 412 (1997) (holding that private prison employees are not shielded by qualified immunity even though they may be deemed to have acted under color of state law for § 1983 purposes).  As such, it could never be a valid defense to Silva's claims against Appellees John Ferguson, John Gay, Samuel Rogers, Scott Hatten, Sergeant Napier, Mary Verdugo, Corrections Corporation of America, and Trans-Cor Corporation (the "Private Prison Defendants").  (Dkt. 12 at 2-A to 2-B)

The remaining appellee public officials and employees (the "Public Official Defendants")[6] fare no better relying on qualified immunity.  Qualified immunity only offers public officials protection from money damages, and it does not bar claims for injunctive or declaratory relief.  See Los Angeles Police Protective League v. Gates, 995 F.2d 1469, 1472 (9th Cir. 1993).  Silva's First Amended Complaint seeks, among other relief, an injunction requiring an inventory and return of seized legal files.  (Dkt. 12 at 7)  His proposed Second Amended Complaint, moreover, seeks additional injunctions related injunctions that would, among other things, prohibiting further retaliatory transfers and forcing prison officials to file his post-conviction motions.  (Dkt. 21 at 46-47)

The Public Official Defendants cannot shield themselves from damages liability by hiding under the cloak of qualified immunity.  Qualified immunity is not available unless the public official can prove that the law governing the official's conduct is clearly established and a reasonable public official would believe that conduct was lawful.  See Jeffers v. Gomez, 267 F.3d 895, 910 (9th Cir. 2001).  However, there is no authority that would ever lead a public official to reasonably believe it is lawful to deliberately confiscate legal materials, actively

---

[6]     The Public Official Defendants include Sara Olson, Rob McKenna, Christine Gregoire, Harold Clark, James Thatcher, James Miller, William Lucas, Maggie Miller-Stout, Richard Hewson, Counselor Rainville, John Arnold, Counselor Lerch, Sergeant Westfall, and Renate Archer.  (Dkt. 12 at 2 to 2-A)

interfere with a prisoner's ability to file court documents, or engage in a series of retaliatory transfers intended to stifle the prisoner's First Amendment right to petition the courts. Appellees must not have much faith in this defense either, because they make zero effort to apply the facts of this case to the qualified immunity doctrine. (A.B. at 34-35) Their half-hearted invocation of qualified immunity is obviously deficient, and there is no reason for this Court to consider that defense further.

## CONCLUSION

There is no valid reason to affirm any portion of the dismissal. Silva stated a claim for denial of his constitutionally protected right of access to the courts without active inference of the Appellees, and the District Court dismissed that claim as legally non-existant. Silva also properly alleged sufficient facts to state plausible claims for racketeering and retaliation. Not only did the District Court improperly dismiss those claims for vagueness and lack of specificity even though properly pled, it did not even give Silva leave to amend his complaint to cure those alleged defects. This appeal was also properly taken *in forma pauperis* because Silva had not accrued three "strikes" for purposes of § 1915(g). Finally, no qualified immunity shields the Appellees from liability or bars any claim for relief in this lawsuit. Accordingly, the Court should vacate the dismissal without leave

to amend and remand all claims to the District Court for further proceedings.

RESPECTFULLY SUBMITTED this 28th day of June, 2010.

SNELL & WILMER L.L.P.


By    s/Robert A. Bernheim
     Robert A. Bernheim
     One South Church Avenue, Suite 1500
     Tucson, AZ  85701
     Attorneys for Plaintiff/Appellant

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 28, 2010, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECP users and that service will be accomplished by the appellate CM/ECF system.

I further certify that 4 paper format copies of the Supplemental Excerpts of Records for the REPLY BRIEF OF APPELLANT MATTHEW G. SILVA were sent via FedEx, next day delivery, addressed to:

> Molly C. Dwyer
> Clerk of the Court
> UNITED STATES COURT OF APPEALS
> FOR THE NINTH CIRCUIT
> 95 7th Street
> San Francisco, CA 94103-1526

and that 2 copies of the foregoing Excerpts of Records for the REPLY BRIEF OF APPELLANT MATTHEW G. SILVA were mailed, first-class, postage pre-paid, addressed to the following:

> Robert M. McKenna
> Andrea Vingo
> OFFICE OF WASHINGTON ATTORNEY GENERAL,
> CORRECTIONS DIVISION
> PO Box 40116
> Olympia, WA 98504-0116
> Attorneys for Defendants/Appellees

June 28, 2010                                      s/Robert A. Bernheim
                                                   Robert A. Bernheim

## <u>CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS</u>

1.  This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

    ☒ this brief contains <u>4,444</u> words, excluding parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

this brief uses a monospaced typeface and contains **_____** lines of text, excluding parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

    ☒ this brief has been prepared in a proportionately spaced typeface using <u>Microsoft Word 2003</u> <u>14 point Times New Roman font</u>, *or*

this brief has been prepared in a monospaced typeface using

**_____   _____**.


<u>June 28, 2010</u>                    <u>        s/Robert A. Bernheim               </u>
                                        Robert A. Bernheim
                                        Attorney for Plaintiff/Appellant

21

11620291